IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| E.V. DRAKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3607 |
| | § | |
| COSTUME ARMOUR, INC., and | § | |
| CHRISTO VAC et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants Costume Armour, Inc. and Christo Vac's (collectively, "Defendant CAI") Motion to Dismiss (Doc. 4) and Defendant Drake Loeb, PLLC's ("Defendant Drake Loeb") Motion to Dismiss (Doc. 5). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court recommends that both motions be **GRANTED**.

## I. Case Background

Plaintiff, proceeding pro se, filed this action alleging civil rights violations under 42 U.S.C. §§ 1981 and 1991, violations of the mail and wire fraud statutes, and breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.[2] Plaintiff also alleges state law claims for: (1) breach of implied warranty;

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 15, Ord. Dated Jan. 27, 2017.

[2] See Doc. 1, Pl.'s Compl. p. 2

(2) common law fraud; (3) fraud by non-disclosure and misrepresentation; (4) breach of contract; (5) deceptive and unfair trade practices; (6) specific performance; (7) negligence and negligent misrepresentation; (8) exemplary damages and vicarious liability; and (9) intentional infliction of emotional distress.[3]

## A. **Factual Background**

In early 2015, Plaintiff had discussions with Defendant CAI about the creation of certain costumes and props.[4] On February 10, 2015, Defendant CAI sent Plaintiff its estimates for the costumes and props.[5] One estimate, in the amount of $11,885, was for one Roman Helmet mold and prototype, one Roman Shoulders mold and prototype, one Roman Breastplate mold and prototype, one Roman Tab Skirt prototype, one Roman Short Sword with Belt and Scabbard prototype, one undergarment for Christ prototype, and one Roman Crown of Thorns mold and prototype.[6]

A second estimate dated February 10, 2015 in the amount of $8,700 was for producing only the molds listed above.[7] A third estimate dated February 10, 2015, in the amount of $7,600 was for producing the molds listed in the second invoice, excepting the

---

[3]  See id.

[4]  See id.

[5]  See Doc. 2-1, Ex. 3 to Pl.'s Compl., Est. Dated Feb. 10, 2015 p. 1.

[6]  See id.

[7]  See id. Doc. 2-1, Ex. 3 to Pl.'s Compl., Est. Dated Feb. 10, 2015 p. 2.

crown of thorns mold.[8]  A third estimate dated February 11, 2015,

in the amount of $3,185 was for the prototypes listed in the first

invoice.[9]  All of the invoices stated that fifty-percent of the

cost of the order was due in advance of production, with the

balance due before CAI shipped the order.[10]

Plaintiff sent Defendant CAI a deposit in the amount of $1,600

on February 1, 2015.[11]  Plaintiff alleged that he requested that

this deposit be utilized to create a mold for the crown of thorns,

a crown of thorns prototype, and an undergarment.[12]  On February 19,

2015, Defendant CAI notified Plaintiff that it had received the

$1,600 check, which it interpreted to be the fifty-percent down

payment on the $3,185 prototype invoice.[13]  Plaintiff alleges that

he later found out that the original quoted price did not include

the cost of the molds for the costumes.[14]  After learning of the

additional cost, Plaintiff sent Brian Wolfe ("Wolfe"), an employee

of Defendant CAI, pictures of the costumes that Defendant CAI was

---

[8]     See id. p. 3.

[9]     See Doc. 2-1, Ex. 4 to Pl.'s Compl., Est. Dated Feb. 11, 2015 p. 1.

[10]     See Doc. 2-1, Ex. 3 to Pl.'s Compl., Est. Dated Feb. 10, 2015 pp. 1-3; Doc. 2-1, Ex. 4 to Pl.'s Compl., Est. Dated Feb. 11, 2015 p. 1.

[11]     See Doc. 1, Pl.'s Compl. p. 3.

[12]     See id. p. 4.

[13]     See Doc. 2-1, Ex. 1 to Pl.'s Compl., Email Dated Feb. 19, 2015 p. 2.

[14]     See Doc. 1, Pl.'s Compl. p. 3.

to make for him.[15]  Plaintiff subsequently rejected the crown of thorns, stating it was "poorly crafted or manufactured."[16] Plaintiff was never refunded the $1,600, and did not receive the costumes or molds.[17]

On February 29, 2016, Wolfe forwarded an email he received from his attorney, Ralph Puglielle ("Puglielle") of Defendant Drake Loeb.[18]  This email stated "I though he had gone away but he's apparently at it again.  If he does file suit, I'd recommend a pre-answer motion to dismiss and a request for sanctions."[19]

On March 16, 2015, Wolfe responded to Plaintiff via email that "If you [Plaintiff] wanted a copy of this crown of thorns why did you send me these pictures from the Passion of the Christ and ask for an exact copy of that crown of thorns?"[20]  On that same date, Plaintiff sent emails to Defendant CAI stating that he was going to file suit against them.[21]

**B.   Procedural Background**

Plaintiff filed his original complaint on December 8, 2016,

---

[15]    See id.

[16]    See id.

[17]    See id. pp. 3-4.

[18]    See id. p. 6.

[19]    See id. p. 28.

[20]    See id. p. 4.

[21]    See id. p. 6.

against Defendant CAI and its law firm, Defendant Drake Loeb, complaining about his costume order's processing, quality, and non-delivery.[22]

On January 5, 2017, Defendant CAI filed a motion to dismiss for failure to state a claim.[23] Defendant CAI also noted that Plaintiff had been declared a vexatious litigant by other courts, cited forty-one lawsuits decided against Plaintiff, and pointed to an almost identical breach of contract lawsuit filed by Plaintiff ten years ago that also alleged delivery of an unsatisfactory crown of thorns prototype.[24]

Defendant Drake Loeb subsequently filed a motion to dismiss, asserting a lack of personal jurisdiction and failure to state a claim.[25] On January 17, 2017, Plaintiff filed a response to Defendant CAI's motion to dismiss, and filed a response to Defendant Drake Loeb's motion to dismiss on January 26, 2017.[26] In his response to Defendant CAI's motion to dismiss, Plaintiff requested the court strike the exhibits attached to Defendant CAI's motion to dismiss.[27] Both Defendant Drake Loeb and Plaintiff later

---

[22] See Doc. 1, Pl.'s Compl.

[23] See Doc. 4, Def. CAI's Mot. to Dismiss.

[24] See id.

[25] See Doc. 5, Def. Drake Loeb's Mot. to Dismiss.

[26] See Doc. 11, Pl.'s Resp. to Def. CAI's Mot. to Dismiss & Pl.'s Mot. to Strike; Doc. 14, Pl.'s Resp. to Def. Drake Loeb's Mot. to Dismiss.

[27] See Doc. 11, Pl.'s Resp. to Def. CAI's Mot. to Dismiss & Pl.'s Mot. to Strike.

filed replies.[28]

## II.  Legal Standards

### A.  Rule 12(b)(2)

The Federal Rules of Civil Procedure authorize a court to dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant.  See Fed. R. Civ. P. 12(b)(2). On a motion to dismiss decided without benefit of an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case in support of jurisdiction.  Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 431 (5th Cir. 2014).

The district court "is not obligated to consult only the assertions in the plaintiff's complaint" may receive "any combination of recognized methods of discovery," including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis.  Hazim v. Schiel & Denver Book Publishers, 647 F. App'x 455, 457 (5th Cir. 2016)(unpublished)(quoting Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006)); Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008)(internal quotation marks omitted) (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's

---

[28]    See Doc. 21, Def. Drake Loeb's Reply; Doc. 25, Pl.'s Resp. to Def. CAI's Reply.

uncontroverted allegations. _Johnston v. Multidata Sys. Int'l Corp._, 523 F.3d 602, 609 (5th Cir. 2008).

A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers jurisdiction and if jurisdiction is consistent with due process under the United States Constitution. _Id._ In Texas, the long-arm statute permits personal jurisdiction to the full extent allowed by the Due Process Clause. _Id._

> The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and "substantial justice."

_Latshaw v. Johnston_, 167 F.3d 208, 211 (5th Cir. 1999)(quoting _Int'l Shoe Co. v. Wash._, 326 U.S. 310, 316 (1945)).

Minimum contacts are established with a state by a defendant whose "conduct and connection" with that state are significant enough that the defendant "should reasonably anticipate being haled into court" in that state. _Nuovo Pignone, SpA v. STORMAN ASIA M/V_, 310 F.3d 374, 379 (5th Cir. 2002)(quoting _Burger King Corp. v. Rudzewicz_, 471 U.S. 462, 474 (1985)). The defendant must "purposely avail[] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." _Id._ (quoting _Burger King Corp._, 471 U.S. at 475).

The Supreme Court of Texas has identified three distinct

7

aspects of the "purposeful availment" requirement. First, only the defendants' contacts with the forum are relevant. <u>Michiana Easy Livin' Country, Inc. v. Holten</u>, 168 S.W.3d 777, 785 (Tex. 2005). A defendant should not be called into court in a jurisdiction soley as a result of unilateral activity of another party or third person. <u>Id.</u> Second, the acts relied on must be purposeful, as opposed to random, isolated, or fortuitous. <u>Id.</u> Third, the defendant must seek some benefit, advantage, or profit, by availing itself to the jurisdiction. <u>Id.</u>

General jurisdiction exists when contacts are so continuous and systematic as to render the defendant essentially at home. <u>Daimler AG v. Bauman</u>, ___ U.S. ___, 134 S. Ct. 746, 754 (2014). However, not all continuous business activity within a state is enough to support personal jurisdiction for claims unrelated to the that activity. <u>Id.</u> at 757 (quoting <u>Int'l Shoe Co.</u>, 326 U.S. at 318). "[O]nly a limited set of affiliations with a forum," those that render the business "essentially at home" there, "will render a defendant amenable to all-purpose jurisdiction there." <u>Id.</u> at 760, 761.

Specific jurisdiction exists if the asserted cause of action arises out of or is related to the defendant's contact with the forum. <u>Id.</u> Upon a showing of minimum contacts, the court considers the second prong of the due process analysis, whether personal jurisdiction comports with traditional notions of fair

play and substantial justice. See Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 421 (5th Cir. 1993).

**B. Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir. 2010).

When reviewing a Rule 12(b)(6) motion, the court must be mindful that a complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Rule 8(a)(2)

requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  <u>Twombly</u>, 550 U.S. at 555.

## III. Analysis[29]

The court analyzes Defendants' motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).  However, the court will first address Plaintiff's request to strike Defendant CAI's exhibits.

## A.  <u>Plaintiff's Request to Strike</u>

In response to Defendant CAI's motion to dismiss, Plaintiff requests that the court strike some of the exhibits attached to Defendant CAI's motion.  These exhibits consist of a list of lawsuits Plaintiff filed and lost,[30] public records demonstrating that Plaintiff has been declared a vexatious litigant,[31] a complaint and other court documents filed in a case against different

---

[29]    Defendant CAI challenges Plaintiff's standing to file this suit, arguing that the alleged agreement in this case was formed between Defendant CAI and Plaintiff's company, Wayne-Vonn Publishing and citing several Wayne-Vonn Publishing documents in support.  <u>See</u> Doc. 4-2, Ex. 2 to Def. CAI's Mot. to Dismiss, Feb. 20 Letter from Wayne-Vonn Publishing Group p. 14; Mar. 16 Letter from Wayne-Vonn Publishing Group p. 21.  In Plaintiff's complaint, Plaintiff alleges that the agreement took place between himself and Defendant CAI.  As the court must take Plaintiff's allegations as true for purposes of a motion to dismiss, the court finds that Plaintiff has standing for purposes of this motion to dismiss.  The court cautions Plaintiff that if, in fact, it was his company that contracted with CAI, then the lawsuit should have brought in the name of the company and Plaintiff would be committing the unauthorized practice of law by representing that company.

[30]    <u>See</u> Doc. 4-1, Ex. 1 to Def. CAI's Mot. to Dismiss, List of Lawsuits pp. 1-4.

[31]    <u>Id.</u> List of Vexatious Litigants pp. 6, 8.

defendants over another improperly made crown of thorns,[32] and
incorporation and franchise tax documents for Plaintiff's LLC.[33]
The court did rely on an admission Plaintiff made in connection
with a court pleading that contradicted his present complaint.[34]
This statement is relevant and admissible. <u>See</u> Fed. R. Evid.
801(d)(2). As the court has not utilized the remaining exhibits
in ruling on the motions to dismiss, Plaintiff's request to strike
these exhibits is moot.

## B.  <u>Personal Jurisdiction Over Defendant Drake Loeb</u>

The court first addresses Defendant Drake Loeb's legal
challenges to Plaintiff's claims for lack of personal jurisdiction
under Rule 12(b)(2).

Here, the court does not have general jurisdiction over
Defendant Drake Loeb, as the only purported contact between
Defendant Drake Loeb and Texas was the February 29, 2016 email
forwarded to Plaintiff by Wolfe. It is clear that Defendant Drake
Loeb, a New York PLLC, is not at home in Texas.

With respect to specific personal jurisdiction, the Fifth
Circuit employs a three-step analysis, which combines the due

---

[32]    <u>See</u> Doc. 4-3, Ex. 3 to Def. CAI's Mot. to Dismiss, Pl.'s Orig.
Compl., <u>Eric Drake v. Todd Tucker, et al.</u>, Cause No. 74789, 40th Jud. Dist. Ct,
Ellis County, Texas.

[33]    <u>See</u> Doc. 4-4, Ex. 4 to Def. CAI's Mot. to Dismiss, Incorporation
Documents, pp. 1-5.

[34]    <u>See</u> <u>infra</u>, Footnote 45 (citing Doc. 4-2, Pet.'s Verified Pet. to
Perpetuate Testimony, p. 3).

process and the specific jurisdiction considerations, to determine whether the court can exercise specific jurisdiction. The court must evaluate:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, SpA, 310 F.3d at 378. The determinative factor is that the act or acts upon which specific jurisdiction is based must be connected to the forum state and to the cause of action alleged. See id.

"A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Lewis v. Fresne, 252 F.3d 352, 358-59 (5th Cir. 2001). The Fifth Circuit has stated that "it is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state." Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376, 378 (5th Cir. 2003).

Defendant Drake Loeb, a New York PLLC, argues that Plaintiff failed to establish a prima facie showing of personal jurisdiction in this court. Defendant Drake Loeb argues that the email which Plaintiff utilizes to attempt to establish personal jurisdiction

was not sent to Plaintiff by Defendant Drake Loeb. Defendant Drake Loeb attached an affidavit from attorney Puglielle, averring that no one from Defendant Drake Loeb, including himself, had ever corresponded directly with Plaintiff.[35] Additionally, Puglielle avers that he "did not instruct an employee of Drake Loeb PLLC or any other person to send an e-mail to the plaintiff."[36]

Plaintiff concedes this fact in his reply and contends that this email was forwarded to him by Wolfe. Plaintiff has presented multiple copies of the email, one filed in conjunction with his complaint,[37] another typed into the body of his reply,[38] and another in an exhibit to a reply.[39] All versions of this email provided by Plaintiff look as if they were typed by him and do not appear to be a print out of the original version of the email. The version attached to the affidavit shows that it was sent to Wolfe, and the other version contained in Plaintiff's response omits the line demonstrating to whom it was sent.[40]

---

[35] See Doc. 21-1, Ex. 1 to Def. Drake Loeb's Reply, Aff. of Puglielle p. 1.

[36] See id.

[37] See Doc. 2-1, Ex. 15 to Pl.'s Aff. p. 26.

[38] See Doc. 14, Pl.'s Opp. & Resp. to Def. Drake Loeb's Mot. to Dismiss p. 4.

[39] See Doc. 25, Ex. 1 to Pl.'s Opp. & Resp. to Def. Drake Loeb's Reply p. 12.

[40] The court questions whether Plaintiff will be able to authenticate any email under the circumstances but now is not the time to concerned with the authenticity or admissibility of any particular exhibit.

In Plaintiff's reply, he contends that Wolfe and Puglielle conspired to intimidate him by sending him the email, and identifies Wolfe as the one who actually forwarded the email. Along with his response, Plaintiff submitted an affidavit confirming his belief that Puglielle conspired with Wolfe to send Plaintiff the email.

Because the court must resolve all conflicts in the evidence in favor of Plaintiff, the court finds, based on the scanty record before it, that Plaintiff has sufficiently alleged that Defendant Drake Loeb purposefully availed itself of this court's jurisdiction by conspiring with Defendant CAI to forward the Puglielle email. Therefore, Defendant Drake Loeb's motion to dismiss for want of personal jurisdiction must be denied at this time.

## C. **Federal Claims**

### 1. **Mail and Wire Fraud**

Plaintiff alleges that Defendant CAI committed mail fraud, wire fraud, and theft. Plaintiff contends that after Defendant CAI received an electronic payment, the company intentionally withheld a product that was contracted to be sent through U.S. mail.

The federal mail and wire fraud criminal statutes, 18 U.S.C. §§ 1341 and 1343, do not create a private right of action.[41] <u>See</u>

---

[41] Plaintiff also asserts that Defendant CAI committed mail fraud under 18 U.S.C. § 1346. This section merely defines the term "scheme or artifice to defraud." The court will construe Plaintiff's mail fraud claim as falling under 18 U.S.C. § 1341.

Thompson v. Wells Fargo Bank, N.A., Civ. Action No. H-15-598, 2016 WL 164114 at *3 (S.D. Tex. Jan. 14, 2016)(unpublished)(citing Napper v. Anderson, Hensley, Shields, Bradford & Pritchard, 500 F.2d 634, 636 (5th Cir. 1974)(no private right of action for federal mail or wire fraud)). Therefore, Plaintiff's claims for mail and wire fraud must be dismissed.

## 2. Breach of Warranty

In Plaintiff's complaint, Plaintiff also asserts a breach of implied warranty claim against Defendant CAI and cites to 15 U.S.C. § 2301, a federal statute defining terms about consumer product warranties, as a basis for federal jurisdiction. The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., creates a state cause of action for breach of warranty of consumer products, and a federal cause of action in cases where the amount in controversy is at least $50,000. 15 U.S.C. § 2310(d); see also Scarlott v. Nissan North America, Inc., 771 F.3d 883, 887-89 (5th Cir. 2014). As the amount in controversy in this case is clearly below $50,000, as explained later in the analysis, the court finds that Plaintiff has not stated a claim under the Magnuson-Moss Warranty Act.

## 3. Discrimination and Section 1981[42]

---

[42] In addition to his Section 1981 and discrimination claim, Plaintiff also alleges that Defendants violated 42 U.S.C. § 1991. Section 1991 provides for fees appointed to executed process, stating that "[e]very person appointed to execute process under section 1989 of this title shall be entitled to a fee of $5 for each party he may arrest and take before any United States magistrate Judge . . . ." 42 U.S.C. § 1991. As Plaintiff alleges no facts about the execution of process under Section 1989 and Plaintiff alleges it alongside his Section 1981 claim, the court will construe Plaintiff's complaint as raising only

Plaintiff asserts claims for racial discrimination against Defendant CAI and Defendant Drake Loeb, citing in support Section 1981. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence . . . as is enjoyed by White citizens." 42 U.S.C. § 1981(a). A plaintiff must show the following elements: "(1) that [he] is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." <u>Morris v. Dillard Dep't Stores, Inc.</u>, 277 F.3d 743, 751 (5th Cir. 2001). Additionally, "a plaintiff must establish the loss of an actual, not speculative or prospective, contract interest." <u>Id.</u>

As to the element of discriminatory intent, "naked allegations . . . are too conclusory to survive a motion to dismiss." <u>Body by Cook, Inc. v. State Farm Mutual Automobile Ins.</u>, __ F.3d __, 2017 WL 3634236, at *3 (5th Cir. 2017)(internal quotations and citation omitted). Discriminatory motive is often shown by circumstantial evidence, and "[a]n allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim." <u>Id.</u> However, "[p]oor treatment alone . . . without a

—————————
a Section 1981 claim.

16

showing of both actual discrimination and intent to discriminate, will not support such a claim." Crosby v. Kilgore, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. Nov. 12, 1993)(unpublished).

In his complaint, Plaintiff alleges that Defendant CAI intentionally withheld the crown of thorns and refused to issue a refund because of his race. Plaintiff alleges that "Wolfe . . . did share with the Plaintiff that Donald J. Trump, the billionaire businessman . . . took delivery of a costume crafter or made by CAI, and that Donald J. Trump never paid for the costume, which Mr. Wolfe alleged was expensive to craft, make, or manufacture."[43] Plaintiff also avers that Wolfe told him that, "President Trump stole the costume from CAI."[44] Although Plaintiff argues that this is evidence of racial animus, the court disagrees. The court reads Wolfe's alleged statement as a justification for Defendant CAI's policy regarding the requirement of a down payment or payment in full before shipping, not of racial animus.[45]

Plaintiff also alleged that "CAI did not take any action against Donald J. Trump . . . on account of his race, white."[46] However, as explained recently by the Fifth Circuit in Body by

---

[43]    See Doc. 1, Pl.'s Compl. p. 26.

[44]    See Doc. 11, Aff. to Pl.'s Resp. to Def. CAI's Mot. to Dismiss p. 2.

[45]    In fact, Drake admitted as much. See Doc. 4-2, Pet.'s Verified Pet. to Perpetuate Testimony, p. 3. Therein, Drake stated, "During a conversation with Mr. Wolfe, he alleged that Donald Trump (the billionaire) ordered a costume from him, and never paid for the costume. Wolfe further stated to Petitioner that this is the reason why money has to be paid in advance."

[46]    See Doc. 1, Pl.'s Compl. p. 26

<u>Cook</u>, naked or generalized allegations of discriminatory intent are not enough to survive a motion to dismiss for a Section 1981 claim. 2017 WL 3634236, at *2. Plaintiff's conclusory statement cited above is inadequate to state a claim under Section 1981.

Additionally, Plaintiff alleged that Defendant CAI's poor craftsmanship was racially motivated because Defendant CAI either knew it did not have the skills to create Plaintiff's requested costume, or it did have the skills but refused to create such a costume for Plaintiff because of his race.[47] Overall, the court finds that these allegations make no sense and are too speculative to state claim under Section 1981.

Plaintiff also asserts that Defendant CAI and Defendant Drake Loeb conspired to prevent Plaintiff from filing a lawsuit against them, pointing to an email that was forwarded to him stating "I though he had gone away but he's apparently at it again. If he does file suit, I'd recommend a pre-answer motion to dismiss and a request for sanctions."[48] Plaintiff alleges that this constitutes discrimination because of his race and states that Defendant Drake Loeb is a "large white [law] firm."[49] A reading of the email does not support a conclusion that it was forwarded to Plaintiff because of his race but was forwarded as notice to a potential plaintiff

---

[47]     <u>See</u> <u>id.</u> p. 25.

[48]     <u>See</u> <u>id.</u> p. 28.

[49]     <u>See</u> <u>id.</u> p. 30.

that the company would take a strong stand against a future lawsuit. Plaintiff's claims under Section 1981 must be dismissed for failure to state a claim.

**D.  Diversity Jurisdiction**

As the court has recommended dismissal of all of Plaintiff's federal question claims, the court's subject-matter jurisdiction hinges upon whether Plaintiff's damages sufficiently cross the $75,000 amount-in-controversy threshold to give this court diversity jurisdiction over his remaining state-law claims. Plaintiff alleges that this court has diversity jurisdiction as the parties are citizens of different states.

Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).

As the party invoking federal diversity jurisdiction, Plaintiff bears the burden of establishing the amount in controversy by a preponderance of the evidence.  Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 910 (5th Cir. 2002).  In considering whether Plaintiff has met this burden, the court must engage in a two-step process: first, it must examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount; second, if it is not facially apparent, the court may turn to "summary judgment-type" evidence to

19

aid in its inquiry.  _See_ _id._  Jurisdictional facts "must be judged

as of the time the complaint is filed; subsequent events cannot

serve to deprive the court of jurisdiction once it has attached."

_St. Paul Reins. Co., Ltd. v. Greenberg_, 134 F.3d 1250, 1253-54 (5th

Cir. 1998).

    A court determines if the amount in controversy is facially

apparent by examining the complaint and ascertaining whether the

amount in controversy is "likely" to exceed $75,000.  _See_ _Allen v._

_R & H Oil & Gas Co._, 63 F.3d 1326, 1336 (5th Cir. 1995).  In

conducting this analysis, the court may refer to the types of

claims alleged by the plaintiff and the nature of the damages

sought.  _See id._

    Plaintiff, in his complaint, attempts to bring the amount-in-

controversy over the required threshold by alleging speculative and

conditional damages.  Plaintiff requests specific performance, a

complete refund, exemplary damages, mental anguish, and attorney's

fees.  Plaintiff asks that Defendant CAI "make and remake the

costumes that Plaintiff orders until the Plaintiff is satisfied."[50]

Alternatively, and in the event that Plaintiff was unsatisfied with

the quality of these costumes demanded as damages, Plaintiff asks

the court to penalize Defendant CAI $5,000.  Anticipating that

Defendant CAI would refuse to make the demanded costumes, Plaintiff

submitted a protracted outline of prospective damages:  First,

---

[50]    _See_ Doc. 1, Pl.'s Compl. p. 33.

Plaintiff asks the court to penalize Defendant CAI $150,000 per costume for a total of $300,000. Alternatively, Plaintiff requests that Defendant CAI locate a costume company that will make an exact copy of the crown of thorns used in the "Passion of the Christ" film, in addition to: five complete Roman costumes, five Roman undergarments, five crowns of thorns, and one easily-assembled cross capable of sustaining the weight of a two-hundred-fifty-pound man. Notably, these items were not part of the disputed contract.

This case appears to involve a dispute over a $1,600 deposit refund that Plaintiff claims that Defendant CAI owes him.[51] The wish list of costumes Plaintiff seeks as damages are both speculative and not legally available for these state-law claims. In short, Plaintiff's itemization of his damages is largely frivolous. As this court is a court of limited jurisdiction, it must dismiss any action, at any time in the litigation, over which it does not have subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The court concludes that it lacks diversity jurisdiction.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that both motions to dismiss be **GRANTED** unless Plaintiff can demonstrate that he meets the court's minimum jurisdictional limit to establish

---

[51]    In the hearing dated March 23, 2017, Plaintiff stated that Defendant CAI stole $1,600 from him.  Hr'g Dated Mar. 23, 2017.

diversity jurisdiction, in light of the dismissal of his federal claims.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 6th day of September, 2017.

_____
U.S. MAGISTRATE JUDGE